Filing # 64924381 E-Filed 12/04/2017 03:20:27 PM

THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR VOLUSIA COUNTY, FLORIDA

BAYBERRY LAKES HOMEOWNERS
ASSOCIATION, INC., a Florida corporation;
DAWN ADAMS; LUIS and ADALINA
ALBELO; JASON BELL and KIMBERLY
DANIELS; JOHN and MICHELLE BETROS;
CRAIG and CASEY BROWN; MICHAEL
BROWN; NATHAN and MICHELLE
BURHANS; PAUL CAIRNS; JENNIFER
CARON; PAMELA COTE and TODD
KOEHLER; SANDRA CONGER; KENNY and
LISA CORBIN; MATTHEW and GLENAE
COVINGTON; JOSEPH DUNN; JOHN and
OLADUNNI DURO-EMANUEL; AMAL
FANOUS; THOMAS and AMANDA FOGLIO;
RANDALL FRANK; IRINA GEIDEL; LOUIS
GILL; ERWIN GREENE and LATESHA
HUNTLEY; RICHARD and TERESA GREGO;
RODNEY HAIGLER; PETER HELLINGER;
VIRGINIA HEWETT; JEFFREY and TINA
JACOBSON; SHARON JAMES; MAREK and
CAROLINA JURACEK; WILLIAM KAMER;
ERNEST OMAR-KASHIF; PAMELA
LIPPELT; LOLITA LIPPELT and RICHARD
GREGO; ANTHONY and DONNA MADDOX;
STEPHANIE MILLER; ANGELA MOBLEY;
MIKE and CELAYNE MOORE; FREDERIC
NDIAYE; JONATHAN and SAMANTHA
NEMERGUT; THO NGUYEN; THUAN
NGUYEN; JOAN ORTAGUS; DHAVAL and
DHANIAXMI PATEL; GARY and ANNETTE
PELHAM; MICHAEL and KATHLEEN
RIDALL; MATTHEW SPROUSE; NORMAN
and GWEN STUART; EDWARD THOMAS;
ROBERT TROWBRIDGE; KEVIN and HELEN
TUCKER; HARRISON and HELEN
WAITHAKA; RYAN WILL; KEVIN ZAHNEN
and SABRINA FALLETTA; THOMAS
ZAHNEN; ED and JANICE ZAPKA, as
individuals, on behalf of themselves and all
others similarly situated,

Plaintiffs,

Case No.: 2017 31905 CICI

AMENDED COMPLAINT
CLASS REPRESENTATION

1



v.

GERALD BOENEMAN, an individual;
GEORGE GLANCE, III, an individual;
MICHAEL HOLDER, an individual; KB HOME
GOLD COAST, LLC, a foreign limited liability
company; KB HOME JACKSONVILLE, LLC, a
foreign limited liability company; KB HOME
ORLANDO, LLC, a foreign limited liability
company; and JOSHUA SPALTEN, an
individual.

_____    Defendants._____/

### AMENDED COMPLAINT FOR DAMAGES
### AND DEMAND FOR JURY TRIAL
(CLASS REPRESENTATION)

Plaintiffs BAYBERRY LAKES HOMEOWNERS ASSOCIATION, INC., in its own

right and on behalf of all members of the Association pursuant to Fla.R.Civ.P. 1.221,

("Association"), and DAWN ADAMS; LUIS and ADALINA ALBELO; JASON BELL and

KIMBERLY DANIELS; JOHN and MICHELLE BETROS; CRAIG and CASEY BROWN;

MICHAEL BROWN; NATHAN and MICHELLE BURHANS; PAUL CAIRNS; JENNIFER

CARON; PAMELA COTE and TODD KOEHLER; SANDRA CONGER; KENNY and LISA

CORBIN; MATTHEW and GLENAE COVINGTON; JOSEPH DUNN; JOHN and

OLADUNNI DURO-EMANUEL; AMAL FANOUS; THOMAS and AMANDA FOGLIO;

RANDALL FRANK; IRINA GEIDEL; LOUIS GILL; ERWIN GREENE and LATESHA

HUNTLEY; RICHARD and TERESA GREGO; RODNEY HAIGLER; PETER HELLINGER;

VIRGINIA HEWETT; JEFFREY and TINA JACOBSON; SHARON JAMES; MAREK and

CAROLINA JURACEK; WILLIAM KAMER; ERNEST OMAR-KASHIF; PAMELA

LIPPELT; LOLITA LIPPELT and RICHARD GREGO; ANTHONY and DONNA MADDOX;

STEPHANIE MILLER; ANGELA MOBLEY; MIKE and CELAYNE MOORE; FREDERIC

NDIAYE; JONATHAN and SAMANTHA NEMERGUT; THO NGUYEN; THUAN NGUYEN;
JOAN ORTAGUS; DHAVAL and DHANIAXMI PATEL; GARY and ANNETTE PELHAM;
MICHAEL and KATHLEEN RIDALL; MATTHEW SPROUSE; NORMAN and GWEN
STUART; EDWARD THOMAS; ROBERT TROWBRIDGE; KEVIN and HELEN TUCKER;
HARRISON and HELEN WAITHAKA; RYAN WILL; KEVIN ZAHNEN and SABRINA
FALLETTA; THOMAS ZAHNEN; ED and JANICE ZAPKA (collectively, "Homeowners")[1],
individually and as the appropriate class representatives of all members of the Association who
own single-family homes constructed by the Defendants, by and through undersigned counsel,
hereby sue the following Defendants and seek trial by jury: KB HOME ORLANDO, LLC; KB
HOME JACKSONVILLE, LLC; and KB HOME GOLD COAST, LLC; JOSHUA SPALTEN;
GEORGE GLANCE, III; GERALD BOENEMAN; and MICHAEL HOLDER (collectively,
"DEFENDANTS"). In support thereof, the Association and Homeowners allege as follows:

## NATURE OF CASE

1.    This is an action for damages arising from the negligent and defective
construction of the exterior stucco system(s) ("Stucco") of the 266 single-family homes in the
Bayberry Lakes subdivision, located in Volusia County, Florida, which DEFENDANTS
designed, developed, constructed, built, and/or sold (collectively, the "Homes").

2.    The Association brings this action in its own right and on behalf of the
Association members pursuant to Fla.R.Civ.P. 1.221. Alternatively, the Homeowners assert
claims, both on their own behalf and as class representatives (pursuant to Fla.R.Civ.P. 1.220) for
all members of the Association who own Homes which DEFENDANTS constructed in the
Bayberry Lakes subdivision.

---

[1] The list of the Homeowners' full names and addresses are set forth on attached Exhibit A.

## JURISDICTION AND VENUE

3.      This is an action for monetary damages in excess of $15,000.00 (exclusive of interest, costs and attorney's fees), and this Court otherwise has jurisdiction over the subject matter hereof.

4.      The Homes which are the subject of this action are located in Volusia County, Florida.

5.      The Association has an office for the transaction of its usual and customary business in Volusia County, Florida.

6.      The Homeowners reside in Volusia County, Florida, and/or own one or more of the Homes located in Volusia County.

7.      At all times material, KB HOME ORLANDO, LLC ("KB Orlando"), KB HOME JACKSONVILLE, LLC ("KB Jacksonville"), and KB HOME GOLD COAST, LLC ("KB Gold Coast") (collectively, "KB") conducted business or resided in Volusia County, Florida.

8.      At all times material, JOSHUA SPALTEN, GEORGE GLANCE, III, GERALD BOENEMAN, and MICHAEL HOLDER conducted business or resided in Volusia County, Florida.

9.      The acts and/or omissions giving rise to this complaint took place in Volusia County, and each cause of action occurred in Volusia County, Florida. Therefore, jurisdiction and venue are proper in this County.

10.     All conditions precedent to bringing this action have occurred or have been waived, including, but not limited to, the requirements of Chapter 558, Florida Statutes.

11.     The alleged defects herein have been examined and certified by an appropriately licensed Florida engineer, design professional, contractor, or otherwise licensed Florida individual or entity.

4

## PARTIES

12.    The Association is a corporation organized and existing under Chapter 720 of the Florida Statutes to provide a corporate entity, pursuant to §720.302, Fla. Stat., for the operation of the Homes located in Volusia County, Florida. The Association asserts claim on behalf of all of the Homeowners, pursuant to its governing documents and Fla. R. Civ. P. 1.221.

13.    The Homeowners are the lawful fee-simple owners of certain of the Homes identified in Exhibit A. The Homeowners bring their individual claims and are the appropriate representatives of the class of owners of all Homes in the Bayberry Lakes subdivision, constructed and/or sold by DEFENDANTS, suffering from negligent and defective construction of the Stucco.

14.    Upon information and belief, KB Orlando is a Delaware limited liability company authorized to do business in Florida, with its principal address located at 9102 Southpark Center Loop Suite 140, Orlando, FL 32819.

15.    Upon information and belief, KB Orlando served as a designer, developer, and general contractor (as that term is defined in §489.105(3)(a) Fla. Stat.) for certain Homes.

16.    Upon information and belief, KB Jacksonville is a Delaware limited liability company authorized to do business in Florida, with its principal address located at 10475 Fortune Parkway Suite 100, Jacksonville, FL 32256.

17.    Upon information and belief, KB Jacksonville served as a designer, developer, and general contractor (as that term is defined in §489.105(3)(a) Fla. Stat.) for certain Homes.

18.    Upon information and belief, KB Gold Coast is a Delaware limited liability company authorized to do business in Florida, with its principal address located at 735 Fentress Blvd., Daytona Beach, FL 32114.

19.    Upon information and belief, KB Gold Coast served as a designer, developer, and general contractor (as that term is defined in §489.105(3)(a) Fla. Stat.) for certain Homes.

20.    KB is a conglomerate of business entities having common principal address, ownership, management, members, officers, and directors with each other; represented themselves out to the public as one and the same; and shared similar business pursuits as designers, developers, and general contractors of the Homes in the Bayberry Lakes community.

21.    Upon information and belief, GERALD BOENEMAN ("Boeneman") is an individual resident of Florida licensed as a Certified Building Contractor in Florida, with his principal address located at 9102 Southpark Center Loop, Suite 100, Orlando, Florida, 32819.

22.    Upon information and belief, Boeneman served as a building contractor and/or primary qualifying agent for KB (as those terms are defined in §489.105(3)(b) and §489.105(4) Fla. Stat.) for certain Homes.

23.    Upon information and belief, GEORGE GLANCE, III, ("Glance") is an individual resident of Florida licensed as a Certified Building Contractor in Florida, with his principal address located at 6115 South Hampshire, Windermere, Florida, 34786.

24.    Upon information and belief, Glance served as a building contractor and/or primary qualifying agent for KB (as those terms are defined in §489.105(3)(b) and §489.105(4) Fla. Stat.) for certain Homes.

25.    Upon information and belief, MICHAEL HOLDER ("Holder") is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 10475 Fortune Parkway, Suite 100, Jacksonville, Florida, 32256.

6

26.     Upon information and belief, Holder served as a general contractor and/or primary qualifying agent for KB (as those terms are defined in §489.105(3)(a) and §489.105(4) Fla. Stat.) for certain Homes.

27.     Upon information and belief, JOSHUA SPALTEN ("Spalten") is an individual resident of Florida licensed as a Certified Building Contractor in Florida, with his principal address located at 6115 South Hampshire, Windermere, Florida, 34786.

28.     Upon information and belief, Spalten served as a building contractor and/or primary qualifying agent for KB (as those terms are defined in §489.105(3)(b) and §489.105(4) Fla. Stat.) for certain Homes.

29.     The Defendants identified in paragraphs 21-28 above are collectively referred to herein as the "KB Qualifiers."

30.     As a result of the DEFENDANTS' conduct, Plaintiffs have been required to retain the services of the undersigned counsel to represent their interests in this action and are obligated to pay a reasonable fee for counsel's services.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF: STUCCO DEFECTS PRESENT

31.     The exterior(s) of the Homes are all constructed with Stucco.

32.     The first floor of all Homes is similarly constructed with Stucco applied directly over masonry walls.

33.     The second floor of all Homes is similarly constructed with Stucco attached to lath applied over building wrap attached to wood sheathing.

34.     The governing building code for the construction of all Homes is the 2004 Florida Building Code (the "Code").

35.     The defects and deficiencies in the Stucco are substantially similar for all Homes; uniformly plague all Homes; and require the same remediation and repair for all Homes.

7

36.    The stucco defects and deficiencies include, but are not limited to, the following:

i.    The cement plaster of the Stucco is excessively thin and/or applied in less than the number of coats required by Chapter 25 of the Code, ASTM C926, and/or the prevailing local industry standard;

ii.    The Stucco fails to provide weather protection in violation of Chapter 14 of the Code, and/or the prevailing local industry standard; and,

iii.    The flashing was consistently missing or installed improperly permitting water intrusion in violation of Chapter 14 of the Code, and/or the prevailing local industry standard.

37.    The deficiencies described in paragraph 36 above are collectively referred to herein as the "Stucco Deficiencies."

## FACTS COMMON TO THE ASSOCIATION'S CLAIMS FOR RELIEF

38.    The Association's members are collectively the fee-simple owners of the Homes, common areas, and the real property which comprise the Bayberry Lakes community.

39.    Upon information and belief, DEFENDANTS controlled the Association until turnover.

40.    The Stucco Deficiencies have caused excessive and unsightly cracking of the cement plaster; cracking and discoloration of the paint; excessive and unsightly discoloration of the exterior walls of the Homes due to water intrusion; and significant deterioration of the exterior walls of all Homes, in violation of the Association's Architectural and Use Restrictions for which the Association has the right and power to repair.  Titled "Architectural and Use Restrictions," Article IV of the Declaration sets forth regulations that are necessary to maintain a "congenial use" and "protection of value" of the Homes throughout the community, and imposes

this requirement on all members of the Association regarding the aesthetics, maintenance, and repair of the exterior of their Homes, including the Stucco. Article IV provides that the Association has the right and power to review and approve any and all changes to the exterior of the Homes to enforce the quality of the work, the uniformity of the community, and to maintain minimum aesthetic guidelines. Article IV of the Declaration also requires members to maintain the exterior surfaces and structures of Homes in accordance with all applicable laws, rules, or regulations, including the Code and industry standards.

41.    Importantly, Articles IV and IX provide that the Association has the rights and powers to enforce the provisions of the Architectural and Use Restrictions, including maintaining or repairing the Homes at the Association's cost.

42.    The Stucco Deficiencies are so substantial and so consistently and uniformly plague all Homes that it is impractical and/or impossible for the owners of the Homes to meet the requirements of the Architectural and Use Restrictions in the Declaration and for the Association to enforce them.

43.    Consequently, the causes of action alleged herein concern matters of common interest. Pursuant to Fla. R. Civ. P. 1.221, the Association is therefore the lawful, adequate, and appropriate representative to seek redress for the Stucco Deficiencies to the Homes.

44.    Even in the absence of the Declaration, the Stucco Deficiencies are of such a substantial nature that they consistently and uniformly plague all of the Homes and thus affect matters of common interest. Accordingly, pursuant to Fla. R. Civ. P. 1.221, the Association is the lawful, adequate, and appropriate representative to seek redress for the Stucco Deficiencies.

**CLASS REPRESENTATION ALLEGATIONS**

9

45.     Pursuant to Fla.R.Civ.P. 1.220(b)(1)(B) or, alternatively, Fla.R.Civ.P. 1.220(b)(3), the Homeowners bring their direct claims and also serve as the appropriate class representatives of the approximately 266 owners of the Homes which all suffer from the same Stucco Deficiencies.

46.     The Homeowners are the appropriate class representative(s) of the proposed class, to be defined as follows:

> "All current owners of the Homes in the Bayberry Lakes subdivision in Daytona Beach,
> Florida, (a) which DEFENDANTS designed, developed, constructed, built, and/or sold;
> (b) with claims that are not otherwise barred; and (c) which allegedly have the Stucco
> Deficiencies defined in Paragraph 36 above."

47.     Pursuant to Fla.R.Civ.P. 1.220(b)(1)(B), adjudications concerning individual members of the class would, as a practical matter, substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests. DEFENDANTS will have limited funds available to satisfy the claims related to all of the Homes involved. Accordingly, adjudication of this dispute as a singular dispute, rather than as numerous ongoing claims, will allow each of the owners of the Homes to participate in the recovery from the limited funds available.

48.     Alternatively, pursuant to Fla.R.Civ.P. 1.220(b)(3), the questions of law or fact common to the claim of the representative Homeowners predominate over any question of law or fact affecting only individual members of the class, as follows:

> i.      All original purchasers of the Homes entered into substantially similar sales
>         contracts with DEFENDANTS.

ii.   The Homes were all to be constructed in accordance with the same Code, building standards, and minimum requirements.

iii.  The Homes all have a substantially similar design referred to as the "50' Series."

iv.   The Homes were all constructed using a substantially similar set of plans and specifications.

v.    The Stucco on the Homes utilized the same construction design, means, methods, and materials.

vi.   The Stucco Deficiencies are substantially similar for all Homes regardless of home type, elevation, weather exposure, or date of construction, and require the same or similar repair. There exists a common question of fact as to whether DEFENDANTS' improper design, development, construction of the substantially similar Homes caused the substantially similar Stucco Deficiencies present at the Homes.

vii.  Specifically, the Association undertook an investigation, which included destructive testing and visual inspection of the Homes, and which revealed the following:

    (1)   All Homes have consistent stucco cracking patterns;

    (2)   All Homes have excessive cracking in similar locations;

    (3)   The stucco cracking patterns and locations were caused by the Stucco Deficiencies; and

    (4)   The breadth, nature, and consistency of the Stucco Deficiencies requires removal and replacement of all stucco on the Homes, regardless of home type or elevation.

49.   The Homeowners are the appropriate lead Plaintiffs as their claims are typical of the other plaintiffs in the putative class, as follows:

11

    i.     The other members of the class would bring the same causes of action to recover damages for the stucco deficiencies present at the Homes in the Bayberry Lakes community.

    ii.    The Homeowners and the rest of the putative class reside in the same community and are subject to the same Declaration and same covenants running with the land.

    iii.   The Homeowners and the rest of the putative class have the same interest in recovering damages to remediate the common Stucco Deficiencies present at the Homes in the Bayberry Lakes community.

50.    The Homeowners will fairly and adequately protect and represent the interests of each member of the class, as follows:

    i.     The Homeowners are competent to lead the Class and have not been convicted of any crimes related to dishonesty; and,

    ii.    The Homeowners are not antagonistic to any other members of the Class.

51.    Class adjudication is the superior form for this controversy, as evidenced by the following:

    i.     The facts and allegations pled in paragraphs 36 and 45-50 above;

    ii.    The numerous related but separate lawsuits currently filed by some of the Homeowners (Dawn Adams, Joseph Dunn; Sabrina Falletta and Kevin Zahnen; Irina Geidel; Louis Gill; Stephanie Miller; Gary Pelham and Annette Pelham; Norman and Gwendolyn Stuart; and Robert Trowbridge).

    iii.   The forum of Volusia County is ideal for all class members because, by definition, all of the property involved is located in Volusia County; and

iv.    As a practical matter, it will be extremely burdensome on the Volusia County Court, and its pool of jurors, to conduct dozens (if not hundreds) of separate jury trials regarding the substantially similar actions, resulting defect, resulting property damage, and law.

## FACTS COMMON TO ALL CLAIMS

52.    DEFENDANTS undertook to design, develop, and construct the Homes for sale to, and use of, the general public, including the Association, its members (including the Homeowners), and their predecessors in interest.

53.    In so doing, DEFENDANTS failed to reasonably and adequately construct the Homes as follows: failing to design, develop, and/or construct the Homes in accordance with the Code, manufacturer's recommendations, permitted plans and specifications, and the standards in the industry.

54.    The Plaintiffs have only recently discovered the Stucco Deficiencies.

55.    As a direct result of the collective and individual failures on the part of KB, the Association and its members have suffered, and continue to suffer, damages proximately caused by the Stucco Deficiencies in the Homes.

56.    The Stucco Deficiencies were not readily discoverable by the Association or its members through reasonable inspection at the time of purchase, and the Association and its members became aware of the defects and deficiencies only after inspections performed by expert consultants.

57.    In compliance with §558.004, Fla. Stat., the Association and the Homeowners have served upon Defendants written notices (the "558 Notices") including statements that the notice was being given to satisfy the requirements of Ch. 558, Fla. Stat., and specifying in

13

reasonable detail the common defects and damages and injuries to the Homes that are the subject of the claims; and describing in reasonable detail the common causes of the common defects to the extent known, the nature and extent of the damages and injuries resulting from the defects to the extent known, and the location of each defect to the extent known. A Florida certified design professional and/or engineer has examined and certified the defects as alleged in the 558 Notices.

58.    The notices were sent on behalf of the Homeowners and the Association, in accordance with the scope of its duties pursuant to Ch. 720, Fla. Stat.

59.    Since turnover, the Association and Homeowners have performed, and will continue to perform, routine maintenance to the Homes.

60.    Cumulatively, the Stucco Deficiencies have caused resulting damage to the Homes, including, but not limited to, damages to the work and property of other persons or entities, necessitating the need for repairs.

61.    Extensive rehabilitation and repair are necessary to repair the damage caused by the Stucco Deficiencies and/or to reinstate the above stucco system assemblies so that the Homes conform to the applicable code(s), meet reasonable and expected performance standards, and/or comply with the permitted plans and specifications and industry standards.

62.    KB has previously entered into a Stipulated Consent Decree and Final Judgment, in the matter of *Florida v. KB Home, et al.*, Leon County Court Case No. 2016-CA-300, related to KB's systemic failure to install stucco systems in accordance with the code and then subsequently denying warranty claims on the basis of maintenance, just as KB has done in the instant matter.

63.    Despite this Stipulated Consent Decree, KB has refused to provide the relief to the owners of the Homes required by the Stipulated Consent Decree.

## COUNT I
## NEGLIGENCE AND VICARIOUS LIABILITY
### (*THE ASSOCIATION v. DEFENDANTS*)

64.     The Association adopts and re-alleges paragraphs 1-44 and 52-63 above.

65.     The KB served as contractors and qualifying agents for KB, and KB served as the designer, general contractor, and developer for the Homes.   Together, DEFENDANTS were responsible for all aspects of the construction of the Homes, including, but not limited to, exercising reasonable care in designing and constructing the Homes; and in constructing and overseeing the construction of the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

66.     As the general contractors, DEFENDANTS had non-delegable duties to the Association and its members (including the Homeowners) to exercise reasonable care in constructing the Homes (a) in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations; and (b) so as to avoid damaging the Homes.

67.     DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

68.     As the general contractors for the subject project, DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors which worked in on the homes.

69.     As a direct and proximate result of DEFENDANTS' breach of the above-mentioned duties, the Association and members of the Association will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused

by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

**COUNT II**
**BREACH OF FLORIDA BUILDING CODE**
*(THE ASSOCIATION v. DEFENDANTS)*

70.     The Association adopts and re-alleges paragraphs 1-44, 52-63, and 65-69 above.

71.     The Homes were required to be built in accordance with the Code.

72.     The KB served as contractors and qualifying agents for KB, and KB served as the designer, general contractor, and developer for the Homes. Together, DEFENDANTS served as the developer, designer, and general contractor for the construction of the Homes, and thus had a responsibility not to commit violations of the Code.

73.     As the entities and individuals responsible for obtaining and pulling the permits for the construction of the Homes, DEFENDANTS owed to the Association, its members, and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

74.     DEFENDANTS actively participated in the construction of the Homes; directly supervised and influenced the manner in which all of the work was performed; and/or negligently created and/or negligently approved the Stucco Deficiencies. As a result,

16

DEFENDANTS committed violations of the Florida Building Code, violating §553.84, Florida Statutes.

75.    DEFENDANTS knew or should have known that the building code violations existed.

76.    As a direct and proximate result of DEFENDANTS' violations of §553.84 Fla Stat., the Association and its members (including the Homeowners) will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations.

WHEREFORE, the Association demands trial by jury and judgment against DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT III
## DECEPTIVE AND UNFAIR TRADE PRACTICES
### (*THE ASSOCIATION v. KB*)

77.    The Association adopts and re-alleges paragraphs 1-44, 52-63, 65-69, and 71-76 above.

78.    The Association and its members are consumers as that term is defined in §501.203(7), Fla. Stat.

79.    KB was involved in "trade or commerce" at all times relevant herein, as that term is defined in §501.203(8), Fla. Stat., when constructing and selling the individual dwelling units and Common Areas of the Homes to the members of the Association.

80.    KB employed unfair or deceptive acts concerning the Stucco Deficiencies on purchasers of the Homes, in violation of Florida Statutes §501.204(1), Fla. Stat., that were likely to mislead consumers, including the following:

    i.    Express and implied representations that the Homes were constructed in a good and workmanlike manner, and constructed in accordance with at least the minimum standards of the applicable building codes, when KB knew that they were not with respect to the Stucco Deficiencies;

    ii.    Directing and/or approving stucco work performed by subcontractors that KB knew was in violation of the applicable building codes;

    iii.    Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the Stucco Deficiencies with the Homes arose from KB's faulty construction, rather than lack of owner maintenance, and KB knew of same; and

    iv.    KB knew that it was wrongfully denying warranty repairs requests relating to Stucco Deficiencies as KB had the knowledge, experience, education and training to know that other communities KB built had similar Stucco Deficiencies and suffered similar damages, yet chose to continue denying proper and timely warranty requests.

81.    KB knew that the Homes throughout the Bayberry Lakes community suffered from the Stucco Deficiencies and that the construction was in violation of the applicable building

codes, which, if known, the Association's members would not have purchased their Homes for the full purchase price, or would not have purchased the Homes at all.

82.    KB negligently, recklessly, and/or intentionally concealed the Stucco Deficiencies identified above.

83.    The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

84.    KB's actions were taken in an effort to maximize profits, to place profits over the health, welfare, and safety of its consumers; and to satisfy KB's corporate greed and self-interests as KB knew it would be unable to sell the Homes to consumers, at the prices KB sold the Homes, had KB disclosed the Stucco Deficiencies.

85.    Construction experts have discovered that the Homes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages arising from the Stucco Deficiencies.

86.    Florida's Attorney General has investigated KB for engaging in similar practices as noted above throughout Florida.

87.    KB entered into a Stipulated Consent Decree with the state of Florida in which KB agreed to perform repairs for Stucco Deficiencies to communities and houses that KB built, including the Homes.

88.    Just a couple of months after the Stipulated Consent Decree was entered, on February 4, 2016, the Association and its members served Chapter 558 notices to KB advising KB of the systemic Stucco Deficiencies and demanding repairs.

19

89.    Both before and after the settlement with the Attorney General and entry of the Stipulated Consent Decree, KB has repeatedly, consistently, and wrongfully rejected valid requests for repairs arising from the Stucco Deficiencies, thereby breaching the Stipulated Consent Decree and furthering their deceptive trade practices as referenced above.

90.    As a proximate cause of KB's deceptive and unfair trade practices, the Association and its members have suffered actual damages by way of diminution in value, in an amount to be determined at trial, which exceeds $15,000.00.

91.    As a result of KB's deceptive and unfair trade practices, the Association and its members have been compelled to retain the services of legal counsel so as to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings; and to retain expert consultants and witnesses as reasonably necessary to prove its case. The Association and its members are therefore entitled to an award of attorneys' fees and costs in amounts to be established at the time of trial.

**WHEREFORE**, the Association demands trial by jury and judgment against KB for diminution in value damages, actual damages, attorneys' fees, and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act. The Association prays for any other relief the Court deems just and proper.

<u>COUNT IV</u>
<u>NEGLIGENCE AND VICARIOUS LIABILITY</u>
(*THE HOMEOWNERS v. DEFENDANTS*).

92.    The Homeowners adopt and re-allege paragraphs 1-37 and 45-63 above.

93.    The KB served as contractors and qualifying agents for KB and KB served as the designer, general contractor, and developer for the Homes. Together, DEFENDANTS were responsible for all aspects of the construction of the Homes, including but not limited to exercising reasonable care in designing and constructing the Homes; and constructing the Homes

in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

94.    As the general contractors, DEFENDANTS had non-delegable duties to the Association, the Homeowners, and all Association members to exercise reasonable care in constructing the Homes and in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations and guidelines and in such a way so to not damage other property.

95.    DEFENDANTS breached these duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Stucco Deficiencies in the Homes, thereby necessitating repairs.

96.    Further, as the general contractors for the Homes in the Bayberry Lakes subdivision, DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors.

97.    As a direct and proximate result of DEFENDANTS' breach of the above-mentioned duties, the Homeowners and all members of the Association will be required to expend large sums of money for the repair and maintenance of the Homes, and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $15,000.00 (Fifteen Thousand Dollars) and continuing.

**WHEREFORE,** on their own behalf and on behalf of all members of the class defined above of all Association members, the Homeowners demand trial by jury and judgment against DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the cost to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and

consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT V
## BREACH OF FLORIDA BUILDING CODE
### (THE HOMEOWNERS v. DEFENDANTS)

98.    The Homeowners adopt and re-allege paragraphs 1-37, 45-63, and 93-97 above.

99.    The Homes were required to be built in accordance with the Florida Building Code in effect at the time of the Homes' construction.

100.    The KB served as contractors and qualifying agents for KB and KB served as the designer, general contractor, and developer for the Homes. Together, DEFENDANTS had a responsibility not to commit violations of the Florida Building Code.

101.    As the entities and individuals responsible for obtaining and pulling the permits for the construction of the Homes, DEFENDANTS owed the Homeowners and all members of the Association a non-delegable duty to comply with the Florida Building Code.

102.    DEFENDANTS actively participated in the construction of the Homes; directly supervised and influenced the manner in which all of the work was performed; and/or negligently created and/or negligently approved the Stucco Deficiencies.    As such, DEFENDANTS committed violations of the Florida Building Code, violating §553.84, Florida Statutes.

103.    DEFENDANTS knew or should have known that the building code violations existed.

104.    As a direct and proximate result of DEFENDANTS' violations of §553.84 Fla. Stat., the Homeowners and all members of the Association will be required to expend significant sums of money for the repair of the Homes and for resulting damages caused by Stucco

22

Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations.

**WHEREFORE**, on their own behalf and on behalf of all members of the class defined above of all Association members, the Homeowners demand trial by jury and judgment against DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the cost to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

**COUNT VI**
**DECEPTIVE AND UNFAIR TRADE PRACTICES**
*(THE HOMEOWNERS v. KB)*

105.    The Homeowners adopt and re-allege paragraphs 1-37, 45-63, 93-97, and 99-104 above.

106.    KB was involved in "trade or commerce" at all times relevant herein, as that term is defined in §501.203(8), Fla. Stat., when constructing and selling the individual dwelling units and Common Areas of the Homes.

107.    KB employed unfair or deceptive acts concerning the Stucco Deficiencies on purchasers of the Homes, in violation of Florida Statutes §501.204(1), Fla. Stat., that were likely to mislead consumers, including the following:

        i.    Express and implied representations that the Homes were constructed in a good and workmanlike manner, and constructed in accordance with at least the minimum standards of the applicable building codes, when KB knew that they were not with respect to the Stucco Deficiencies;

23

ii.    Directing and/or approving stucco work performed by subcontractors that KB knew was in violation of the applicable building codes;

iii.   Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the Stucco Deficiencies with the Homes arose from KB's faulty construction, rather than lack of owner maintenance, and KB knew of same; and

iv.    KB knew that it was wrongfully denying warranty repairs requests relating to Stucco Deficiencies as KB had the knowledge, experience, education and training to know that other communities KB built had similar Stucco Deficiencies and suffered similar damages, yet chose to continue denying proper and timely warranty requests.

108.    KB knew that the Homes throughout the Bayberry Lakes community suffered from the Stucco Deficiencies and that the construction was in violation of the applicable building codes, which, if known, the Association's members would not have purchased their Homes for the full purchase price, or would not have purchased the Homes at all.

109.    KB negligently, recklessly, and/or intentionally concealed the Stucco Deficiencies identified above.

110.    The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

111.    KB's actions were taken in an effort to maximize profits, to place profits over the health, welfare, and safety of its consumers; and to satisfy KB's corporate greed and self-

24

interests as KB knew it would be unable to sell the Homes to consumers. at the prices KB sold the Homes, had KB disclosed the Stucco Deficiencies.

112.    Construction experts have discovered that the Homes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages arising from the Stucco Deficiencies.

113.    The Florida Attorney General investigated and sued KB for engaging in similar practices as noted above throughout Florida.

114.    KB entered into a Stipulated Consent Decree in which KB agreed to perform repairs for Stucco Deficiencies to communities and houses that KB built, including the Homes.

115.    Just a couple of months after the Stipulated Consent Decree was entered, on February 4, 2016, the Association and its members, including Homeowners, served Chapter 558 notices to KB advising KB of the systemic Stucco Deficiencies and demanding repair.

116.    Both before and after the settlement with the Attorney General and entry of the Stipulated Consent Decree, KB has repeatedly and consistently wrongfully rejected valid requests for repairs arising from the Stucco Deficiencies, thereby breaching the Stipulated Consent Decree and furthering their deceptive trade practices as referenced above.

117.    As a proximate cause of KB's deceptive and unfair trade practices, the Homeowners have suffered actual damages by way of diminution in value, in an amount to be determined at trial, which exceeds $15,000.00.

118.    As a result of KB's deceptive and unfair trade practices, the Homeowners have been compelled to retain the services of legal counsel so as to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings; and to retain

expert consultants and witnesses as reasonably necessary to prove its case. The Homeowners and its members are therefore entitled to an award of attorneys' fees and costs in amounts to be established at the time of trial.

**WHEREFORE**, the Homeowners demand trial by jury and judgment against KB for diminution in value damages, actual damages, attorneys' fees, and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act. The Homeowners pray for any other relief the Court deems just and proper.

DATED:  December 4, 2017.

> **BALL JANIK LLP**
>
> By:   */s/ Evan Small, Esquire*
>      **Phillip E. Joseph**, FL No. 1000368
>      **James C. Prichard**, FL No. 1000397
>      **Evan J. Small**, FL No. 57306
>      **John W. Windle**, FL No. 125169
>      201 E Pine Street, Suite 600
>      Orlando, FL 32801
>      Telephone:      (407) 455-5664
>      Facsimile:      (407) 902-2105
>      E-Mail:    pjoseph@balljanik.com
>                 jprichard@balljanik.com
>                 esmall@balljanik.com
>                 jwindle@balljanik.com
>                 dmiksell@balljanik.com
>                 nanderson@balljanik.com
>
> **MARTELL & OZIM, P.A.**
>      **Patryk Ozim, FL No. 629561**
>      37 N Orange Ave, Suite 500
>      Orlando, FL 32801
>      Telephone:      (407) 377-0890
>      Facsimile:      (407) 674-2543
>      E-mail:    pozim@martellandozim.com
>
> *Counsel for Plaintiffs BAYBERRY LAKES*
> *HOMEOWNERS ASSOCIATION, INC. and*
> *HOMEOWNERS*