# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

BAYBERRY LAKES HOMEOWNERS
ASSOCIATION, INC., a Florida corporation;
DAWN ADAMS; LUIS and ADALINA
ALBELO; JASON BELL and KIMBERLY
DANIELS; JOHN and MICHELLE BETROS;
CRAIG and CASEY BROWN; MICHAEL
BROWN; NATHAN and MICHELLE
BURHANS; PAUL CAIRNS; JENNIFER
CARON; PAMELA COTE and TODD
KOEHLER; SANDRA CONGER; KENNY and
LISA CORBIN; MATTHEW and GLENAE
COVINGTON; JOSEPH DUNN; JOHN and
OLADUNNI DURO-EMANUEL; THOMAS
and AMANDA FOGLIO; RANDALL FRANK;
IRINA GEIDEL; LOUIS GILL; ERWIN
GREENE and LATESHA HUNTLEY;
RICHARD and TERESA GREGO; RODNEY
HAIGLER; PETER HELLINGER; VIRGINIA
HEWETT; JEFFREY and TINA JACOBSON;
SHARON JAMES; MAREK and CAROLINA
JURACEK; WILLIAM KAMER; ERNEST
OMAR-KASHIF; PAMELA LIPPELT; LOLITA
LIPPELT and RICHARD GREGO; ANTHONY
and DONNA MADDOX; STEPHANIE
MILLER; ANGELA MOBLEY; MIKE and
CELAYNE MOORE; FREDERIC NDIAYE;
JONATHAN and SAMANTHA NEMERGUT;
THO NGUYEN; THUAN NGUYEN; JOAN
ORTAGUS; DHAVAL and DHANIAXMI
PATEL; GARY and ANNETTE PELHAM;
MICHAEL and KATHLEEN RIDALL;
MATTHEW SPROUSE; NORMAN and GWEN
STUART; EDWARD THOMAS; ROBERT
TROWBRIDGE; KEVIN and HELEN
TUCKER; HARRISON and HELEN
WAITHAKA; RYAN WILL; KEVIN ZAHNEN
and SABRINA FALLETTA; THOMAS
ZAHNEN; ED and JANICE ZAPKA, as
individuals, on behalf of themselves and all
others similarly situated,

       Plaintiffs,

Case No.: 6:18-cv-00072-GKS-GJK

SECOND AMENDED COMPLAINT
CLASS REPRESENTATION

1

v.

GERALD    BOENEMAN,    an    individual;
GEORGE    GLANCE,    III,    an    individual;
MICHAEL HOLDER, an individual; KB HOME
GOLD COAST, LLC, a foreign limited liability
company; KB HOME JACKSONVILLE, LLC, a
foreign limited liability company; KB HOME
ORLANDO, LLC, a foreign limited liability
company;    and    JOSHUA    SPALTEN,    an
individual.

      Defendants.               /

## SECOND AMENDED COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL
(CLASS REPRESENTATION)

Plaintiffs BAYBERRY LAKES HOMEOWNERS ASSOCIATION, INC., in its own

right and on behalf of all members of the Association pursuant to Fla.R.Civ.P. 1.221,

("Association"), and DAWN ADAMS; LUIS and ADALINA ALBELO; JASON BELL and

KIMBERLY DANIELS; JOHN and MICHELLE BETROS; CRAIG and CASEY BROWN;

MICHAEL BROWN; NATHAN and MICHELLE BURHANS; PAUL CAIRNS; JENNIFER

CARON; PAMELA COTE and TODD KOEHLER; SANDRA CONGER; KENNY and LISA

CORBIN; MATTHEW and GLENAE COVINGTON; JOSEPH DUNN; JOHN and

OLADUNNI DURO-EMANUEL; AMAL FANOUS; THOMAS and AMANDA FOGLIO;

RANDALL FRANK; IRINA GEIDEL; LOUIS GILL; ERWIN GREENE and LATESHA

HUNTLEY; RICHARD and TERESA GREGO; RODNEY HAIGLER; PETER HELLINGER;

VIRGINIA HEWETT; JEFFREY and TINA JACOBSON; SHARON JAMES; MAREK and

CAROLINA JURACEK; WILLIAM KAMER; ERNEST OMAR-KASHIF; PAMELA

LIPPELT; LOLITA LIPPELT and RICHARD GREGO; ANTHONY and DONNA MADDOX;

STEPHANIE MILLER; ANGELA MOBLEY; MIKE and CELAYNE MOORE; FREDERIC

NDIAYE; JONATHAN and SAMANTHA NEMERGUT; THO NGUYEN; THUAN NGUYEN; JOAN ORTAGUS; DHAVAL and DHANIAXMI PATEL; GARY and ANNETTE PELHAM; MICHAEL and KATHLEEN RIDALL; MATTHEW SPROUSE; NORMAN and GWEN STUART; EDWARD THOMAS; ROBERT TROWBRIDGE; KEVIN and HELEN TUCKER; HARRISON and HELEN WAITHAKA; RYAN WILL; KEVIN ZAHNEN and SABRINA FALLETTA; THOMAS ZAHNEN; ED and JANICE ZAPKA (collectively, "Homeowners")[1], individually and as the appropriate class representatives of all members of the Association who own single-family homes developed and constructed by the defendants, by and through undersigned counsel, hereby sue the following defendants and seek trial by jury: KB HOME ORLANDO, LLC; KB HOME JACKSONVILLE, LLC; KB HOME GOLD COAST, LLC; JOSHUA SPALTEN; GEORGE GLANCE, III; GERALD BOENEMAN; and MICHAEL HOLDER (collectively, "DEFENDANTS").    In support thereof, the Association and Homeowners allege as follows:

<u>**NATURE OF CASE**</u>

1.    This is an action for damages arising from the negligent and defective construction of the exterior stucco system(s) ("Stucco") of 266 single-family homes in the Bayberry Lakes subdivision, located in Volusia County, Florida, which DEFENDANTS designed, developed, constructed, built, and/or sold (the "Homes").

2.    The Association brings this action in its own right and on behalf of the Association members pursuant to Fla.R.Civ.P. 1.221. Alternatively, the Homeowners assert claims, both on their own behalf and as class representatives (pursuant to Fed. R. Civ. P. 23) for all members of the Association who own Homes which DEFENDANTS developed and/or constructed in the Bayberry Lakes subdivision.

---

[1] The list of the Homeowners' full names and addresses are set forth on attached Exhibit A.

## JURISDICTION AND VENUE

3.      This is an action for monetary damages in excess of $75,000.00 (exclusive of interest, costs and attorney's fees). While Plaintiffs dispute federal court jurisdiction as articulated Plaintiffs' Motion for Remand, Plaintiffs acknowledge that this Court currently has jurisdiction over the matter.

4.      The Homes which are the subject of this action are located in Volusia County, Florida.

5.      The Association has an office for the transaction of its usual and customary business in Volusia County, Florida.

6.      The Homeowners reside in Volusia County, Florida, and/or own one or more of the Homes located in Volusia County.

7.      At all times material, KB HOME ORLANDO, LLC ("KB ORLANDO"), KB HOME JACKSONVILLE, LLC ("KB JACKSONVILLE"), and KB HOME GOLD COAST, LLC ("KB GOLD COAST") (collectively, "CORPORATE DEFENDANTS") conducted business or resided in Volusia County, Florida.

8.      At all times material, JOSHUA SPALTEN ("SPALTEN"), GEORGE GLANCE, III ("GLANCE"), GERALD BOENEMAN ("BOENEMAN"), and MICHAEL HOLDER ("HOLDER") (collectively, "INDIVIDUAL DEFENDANTS") conducted business or resided in Volusia County, Florida.

9.      The acts and/or omissions giving rise to this complaint took place in Volusia County, and each cause of action occurred in Volusia County, Florida.  Therefore, jurisdiction and venue are proper in this District, pending resolution of Plaintiffs' Motion for Remand.

10.     All conditions precedent to bringing this action have occurred or have been waived, including, but not limited to, the requirements of Chapter 558, Florida Statutes.

11.    The alleged defects herein have been examined and certified by an appropriately licensed Florida engineer, design professional, contractor, or otherwise licensed Florida individual or entity.

## PARTIES

12.    The Association is a corporation organized and existing under Chapter 720 of the Florida Statutes to provide a corporate entity, pursuant to §720.302, Fla. Stat., for the operation of the Homes located in Volusia County, Florida. The Association asserts claims on behalf of all of the Homeowners, pursuant to its governing documents and Fla. R. Civ. P. 1.221.

13.    The Homeowners are the lawful fee-simple owners of some of the Homes identified in Exhibit A. The Homeowners bring their individual claims and are the appropriate representatives of the class of owners of all Homes in the Bayberry Lakes subdivision, developed, constructed, and/or sold by DEFENDANTS, suffering from negligent and defective construction of the stucco.

14.    Upon information and belief, KB ORLANDO is a Delaware limited liability company authorized to do business in Florida, with its principal place of business located at 9102 Southpark Center Loop Suite 140, Orlando, FL 32819.

15.    Upon information and belief, KB ORLANDO served as a developer for the respective Homes identified in Exhibit B.

16.    Upon information and belief, KB ORLANDO served as general contractor (as that term is defined in §489.105(3)(a), Fla. Stat.) for the respective Homes identified in Exhibit B.

5

17.     Upon information and belief, KB JACKSONVILLE is a Delaware limited liability company authorized to do business in Florida, with its principal place of business located at 10475 Fortune Parkway Suite 100, Jacksonville, FL 32256.

18.     Upon information and belief, KB JACKSONVILLE served as a developer for the respective Homes identified in Exhibit B.

19.     Upon information and belief, KB JACKSONVILLE served as general contractor (as that term is defined in §489.105(3)(a), Fla. Stat.) for the respective Homes identified in Exhibit B.

20.     Upon information and belief, KB GOLD COAST is a Delaware limited liability company authorized to do business in Florida, with its principal place of business located at 735 Fentress Blvd., Daytona Beach, FL 32114.

21.     Upon information and belief, KB GOLD COAST served as a developer for the respective Homes identified in Exhibit B.

22.     Upon information and belief, KB GOLD COAST served as general contractor (as that term is defined in §489.105(3)(a), Fla. Stat.) for the respective Homes identified in Exhibit B.

23.     CORPORATE DEFENDANTS are a conglomerate of business entities having common principal address, ownership, management, members, officers, and directors with each other; represented themselves out to the public as one and the same; and shared similar business pursuits as designers, developers, and general contractors of the Homes in the Bayberry Lakes community.

24.     Upon information and belief, BOENEMAN is an individual resident of Florida licensed as a Certified Building Contractor in Florida, with his principal address located at 9102 Southpark Center Loop, Suite 100, Orlando, Florida 32819.

25.     Upon information and belief, BOENEMAN served as a building contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(b) and §489.105(4), Fla. Stat.) for KB ORLANDO, and was responsible for constructing the Homes in which KB ORLANDO served as the developer and/or general contractor.

26.     Upon information and belief, GLANCE is an individual resident of Florida licensed as a Certified Building Contractor in Florida, with his principal address located at 6115 South Hampshire, Windermere, Florida 34786.

27.     Upon information and belief, GLANCE served as a general contractor as well as a building contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(b) and §489.105(4), Fla. Stat.) for KB ORLANDO, and was responsible for constructing the Homes in which KB ORLANDO served as the developer and/or general contractor.

28.     Upon information and belief, HOLDER is an individual resident of Florida licensed as a Certified General Contractor in Florida, with his principal address located at 10475 Fortune Parkway, Suite 100, Jacksonville, Florida 32256.

29.     Upon information and belief, Holder served as a general contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(a) and §489.105(4), Fla. Stat.) for KB GOLD COAST, and was responsible for constructing the Homes in which KB GOLD COAST served as the developer and/or general contractor.

30.    Upon information and belief, SPALTEN is an individual resident of Florida licensed as a Certified Building Contractor in Florida, with his principal address located at 6115 South Hampshire, Windermere, Florida 34786.

31.    Upon information and belief, SPALTEN served as a building contractor and/or primary qualifying agent (as those terms are defined in §489.105(3)(b) and §489.105(4), Fla. Stat.) for KB JACKSONVILLE, and was responsible for the construction of the Homes in which JACKSONVILLE served as the developer and/or general contractor.

32.    As a result of the DEFENDANTS' conduct, Plaintiffs have been required to retain the services of the undersigned counsel to represent their interests in this action and are obligated to pay a reasonable fee for counsel's services.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF:  STUCCO DEFECTS PRESENT

33.    The exterior of the Homes are all constructed with stucco.

34.    The first floor of all Homes is similarly constructed with stucco applied directly over masonry walls.

35.    The second floor of all Homes is similarly constructed with stucco attached to lath applied over building wrap attached to wood sheathing.

36.    The governing building code for the construction of all Homes is the 2004 Florida Building Code (the "Code").

37.    The defects and deficiencies in the stucco are substantially similar for all Homes; uniformly plague all Homes; and require the same remediation and repair to the stucco for all Homes. All classes of Plaintiffs in this case have substantially similar claims against the respective DEFENDANTS responsible for constructing their Homes.

38.    The stucco defects and deficiencies include, but are not limited to, the following:

i.   The cement plaster of the stucco is excessively thin and/or applied in less than the number of coats required by Chapter 25 of the Code, ASTM C926, and/or the prevailing local industry standard;

ii.  The stucco fails to provide weather protection in violation of Chapter 14 of the Code, and/or the prevailing local industry standard; and,

iii. The flashing was consistently missing or installed improperly permitting water intrusion in violation of Chapter 14 of the Code, and/or the prevailing local industry standard.

39.     The deficiencies described in paragraph 38 above are collectively referred to herein as the "Stucco Deficiencies."

## FACTS COMMON TO THE ASSOCIATION'S CLAIMS FOR RELIEF

40.     The Association's members are collectively the fee-simple owners of the Homes, common areas, and the real property which comprise the Bayberry Lakes community.

41.     Upon information and belief, CORPORATE DEFENDANTS controlled the Association until turnover.

42.     The Stucco Deficiencies have caused excessive and unsightly cracking of the cement plaster; cracking and discoloration of the paint; excessive and unsightly discoloration of the exterior walls of the Homes due to water intrusion; and, significant deterioration of the exterior walls of all Homes, in violation of the Association's Architectural and Use Restrictions for which the Association has the right and power to repair.

43.     Titled "Architectural and Use Restrictions," Article IV of the Declaration sets forth regulations that are necessary to maintain a "congenial use" and "protection of value" of the Homes throughout the community, and imposes this requirement on all members of the

Association regarding the aesthetics, maintenance, and repair of the exterior of their Homes, including the stucco. Article IV provides that the Association has the right and power to review and approve any and all changes to the exterior of the Homes to enforce the quality of the work, the uniformity of the community, and to maintain minimum aesthetic guidelines. Article IV of the Declaration also requires members to maintain the exterior surfaces and structures of Homes in accordance with all applicable laws, rules, or regulations, including the Code and industry standards.

44.    Importantly, Articles IV and IX provide that the Association has the rights and powers to enforce the provisions of the Architectural and Use Restrictions, including maintaining or repairing the Homes at the Association's cost.

45.    The Stucco Deficiencies are so substantial and so consistently and uniformly plague all Homes that it is impractical and/or impossible for the owners of the Homes to meet the requirements of the Architectural and Use Restrictions in the Declaration, and for the Association to enforce such Restrictions.

46.    Consequently, the causes of action alleged herein concern matters of common interest. Pursuant to Fla. R. Civ. P. 1.221 and Fla. Stat. § 720.303, the Association is therefore the lawful, adequate, and appropriate representative to seek redress for the Stucco Deficiencies to the Homes.

47.    Even in the absence of the Declaration, the Stucco Deficiencies are of such a substantial nature that they consistently and uniformly plague all of the Homes and thus affect matters of common interest. Accordingly, pursuant to Fla. R. Civ. P. 1.221 and Fla. Stat. § 720.303, the Association is again the lawful, adequate, and appropriate representative to seek redress for the Stucco Deficiencies.

## CLASS REPRESENTATION ALLEGATIONS

48.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Association and Homeowners bring their direct claims and also serve as the appropriate class representatives of the approximately 266 owners of the Homes which all suffer from the same Stucco Deficiencies.

49.     Homeowners and the Association are the appropriate class representative(s) of the proposed class and subclasses.

50.     Homeowners and the Association bring this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following classes comprised of the following:

**"The Bayberry Lakes Community Class"**: All current owners of the Homes in the Bayberry Lakes subdivision in Daytona Beach, Florida, (a) which DEFENDANTS designed, developed, constructed, built, and/or sold; (b) with claims that are not otherwise barred; and (c) which allegedly have the Stucco Deficiencies defined in Paragraph 38 above.

51.     Pursuant to Fed. R. Civ. P. 23(b)(3), a class action is superior to other available methods for fairly an efficiently adjudicating the controversy. Additionally, the questions of law or fact common to the claim of the Association and Homeowners predominate over any question of law or fact affecting only individual members of the class as follows:

i.      All original purchasers of the Homes entered into substantially similar sales contracts with DEFENDANTS.

ii.     The Homes were all to be constructed in accordance with the same Code, building standards, and minimum requirements.

iii.    The Homes all have a substantially similar design referred to as the "50' Series."

iv.  The Homes were all constructed using a substantially similar set of plans and specifications.

v.  The stucco on the Homes utilized the same construction design, means, methods, and materials.

vi.  The Stucco Deficiencies are substantially similar for all Homes regardless of home type, elevation, weather exposure, or date of construction, and require the same or similar repair.

vii.  There exists a common question of fact as to whether DEFENDANTS' improper design, development, construction of the substantially similar Homes caused the substantially similar Stucco Deficiencies present at the Homes.

viii.  Specifically, the Association's investigation to date, which included destructive testing and visual inspection of the Homes, and which revealed the following:

(1)  All Homes have consistent stucco cracking patterns;

(2)  All Homes have excessive cracking in similar locations;

(3)  The stucco cracking patterns and locations were caused by the Stucco Deficiencies; and

(4)  The breadth, nature, and consistency of the Stucco Deficiencies requires removal and replacement of all stucco on the Homes, regardless of home type or elevation.

52.  The Association and Homeowners are the appropriate lead Plaintiffs as their claims are typical of the other plaintiffs in the putative classes, as follows:

i.  The other members of the classes would bring the same causes of action to recover damages for the stucco deficiencies present at the Homes in the Bayberry Lakes community.

    ii.    The Homeowners and the rest of the putative classes reside in the same community and are subject to the same Declaration and same covenants running with the land.

    iii.    The Homeowners and the rest of the putative classes have the same interest in recovering damages to remediate the Stucco Deficiencies present at the Homes in the Bayberry Lakes community.

    iv.    The Homeowners and the rest of the putative classes' claims only differ with regards to which DEFENDANTS constructed and/or developed their respective Homes.

53.    The Association and Homeowners will fairly and adequately protect and represent the interests of each member of the class, as follows:

    i.    The Association and Homeowners are competent to lead the Class and have not been convicted of any crimes related to dishonesty; and,

    ii.    The Association and Homeowners are not antagonistic to any other members of the Class.

54.    Class adjudication is the superior form for this controversy, as evidenced by the following:

    i.    The facts and allegations pled in paragraphs 38 and 48-53 above;

    ii.    The numerous related but separate lawsuits currently filed by some of the Homeowners (Dawn Adams; Joseph Dunn; Sabrina Falletta and Kevin Zahnen; Irina Geidel; Louis Gill; Stephanie Miller; Gary Pelham and Annette Pelham; Norman and Gwendolyn Stuart; and Robert Trowbridge);

    iii.    The forum of Volusia County is ideal for all class members because, by definition, all of the property involved is located in Volusia County; and

iv.     As a practical matter, it will be extremely burdensome on the Court, and its pool

of jurors, to conduct dozens (if not hundreds) of separate jury trials regarding the

substantially similar actions, resulting defect, resulting property damage, and law.

## FACTS COMMON TO ALL CLAIMS

55.     DEFENDANTS undertook to design, develop, and construct the Homes for sale

to, and use of, the general public, including the Association, its members (including the

Homeowners), and their predecessors in interest.

56.     In so doing, DEFENDANTS failed to reasonably and adequately construct the

Homes as follows:  failing to design, develop, and/or construct the Homes in accordance with the

Code, manufacturer's guidelines and recommendations, permitted plans and specifications, and

the standards in the industry.

57.     As a direct result of the collective and individual failures on the part of

DEFENDANTS, the Association and its members have suffered, and continue to suffer, damages

proximately caused by the Stucco Deficiencies in the Homes.

58.     The Stucco Deficiencies were not readily discoverable by the Association or its

members through reasonable inspection at the time of purchase, and the Association and its

members became aware of the defects and deficiencies only after inspections performed by

expert consultants.

59.     In compliance with §558.004, Fla. Stat., the Association and the Homeowners

have served upon Defendants written notices (the "558 Notices") including statements that the

notice was being given to satisfy the requirements of Ch. 558, Fla. Stat., and specifying in

reasonable detail the common defects and damages and injuries to the Homes that are the subject

of the claims; and describing in reasonable detail the common causes of the common defects to

the extent known, the nature and extent of the damages and injuries resulting from the defects to the extent known, and the location of each defect to the extent known. A Florida certified design professional and/or engineer has examined and certified the defects as alleged in the 558 Notices.

60.     The notices were sent on behalf of the Homeowners and the Association, in accordance with the scope of its duties pursuant to Ch. 720, Fla. Stat.

61.     Since turnover, the Association and Homeowners have performed, and will continue to perform, routine maintenance to the Homes.

62.     Cumulatively, the Stucco Deficiencies have caused resulting damage to the Homes, including, but not limited to, damages to the work and property of other persons or entities, necessitating the need for repairs.

63.     Extensive rehabilitation and repair is necessary to repair the damage caused by the Stucco Deficiencies and/or to reinstate the above stucco system assemblies so that the Homes conform to the applicable code(s); meet reasonable and expected performance standards; comply with the permitted plans and specifications and industry standards; and/or comply with Articles IV and IX of the Declaration referenced above.

64.     CORPORATE DEFENDANTS have previously entered into a Stipulated Consent Decree and Final Judgment, in the matter of *Florida v. KB Home, et al.*, Leon County Court Case No. 2016-CA-300, related to CORPORATE DEFENDANTS' systemic failure to install stucco systems in accordance with the code and then subsequently denying warranty claims on the basis of maintenance, just as CORPORATE DEFENDANTS have done in the instant matter.

65.     Despite this Stipulated Consent Decree, CORPORATE DEFENDANTS have refused to provide the relief to the owners of the Homes required by the Stipulated Consent Decree.

## COUNT I
## NEGLIGENCE AND VICARIOUS LIABILITY
### *(THE ASSOCIATION v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

66.     The Association adopts and re-alleges paragraphs 1-65 above.

67.     The Association brings this claim against the respective CORPORATE DEFENDANTS for Homes in which they served as the Developer(s) as identified in Exhibit B.

68.     CORPORATE DEFENDANTS respectively served as the developer(s) for certain of the Homes. As such, CORPORATE DEFENDANTS were respectively responsible for all aspects of the construction of the Homes in which they served as the developer(s), including, but not limited to, exercising reasonable care in the design and construction of the Homes; and in ensuring their contractors and subcontractors constructed the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

69.     As the developers, CORPORATE DEFENDANTS had non-delegable duties to the Association and its members to exercise reasonable care so that the Homes were constructed (a) in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations; and (b) so as to avoid damaging the Homes.

70.     CORPORATE DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

71.     As the developers for the subject project, CORPORATE DEFENDANTS are vicariously responsible for the negligent construction performed on the Homes by their

16

contractors and subcontractors, for those Homes in which the CORPORATE DEFENDANTS

served as developers.

72.    As a direct and proximate result of CORPORATE DEFENDANTS' breach of the

above-mentioned duties, the Association and members of the Association will be required to

expend significant sums of money for the repair and maintenance of the Homes and for damages

caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in

excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against

CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing

the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the

stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and

consequential damages caused thereby including, without limitation, loss of use of the Homes;

costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT II
## BREACH OF FLORIDA BUILDING CODE
*(THE ASSOCIATION v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

73.    The Association adopts and re-alleges paragraphs 1-65 above.

74.    The Association brings this claim against the respective CORPORATE

DEFENDANTS for those homes on which they served as Developer as identified in Exhibit B.

75.    The Homes were required to be built in accordance with the Code.

76.    CORPORATE DEFENDANTS respectively served as the developer and designer

for the construction of certain of the Homes as identified in Exhibit B, and thus had a

responsibility not to commit violations of the Code.

77.    As the entities and individuals actively participating in and responsible for

constructing certain of the Homes, CORPORATE DEFENDANTS owed to the Association, its

members, and future foreseeable owners of the Homes non-delegable duties to comply with the
Florida Building Code.

78.     CORPORATE DEFENDANTS actively participated in the construction of the
Homes in their capacity as developer(s); directly supervised and influenced the manner in which
all of the work was performed; and/or negligently created and/or negligently approved the
Stucco Deficiencies.  As a result, CORPORATE DEFENDANTS committed violations of the
Florida Building Code, violating §553.84, Florida Statutes.

79.     CORPORATE DEFENDANTS knew or should have known that the building
code violations existed.

80.     As a direct and proximate result of CORPORATE DEFENDANTS' violations of
§553.84 Fla. Stat., the Association and its members (including the Homeowners) will be required
to expend substantial sums of money for the repair of the Homes and for resulting damages
caused by the Stucco Deficiencies, including, but not limited to, those conditions described
herein, and to repair the building code violations. The damages, in an amount to be determined at
trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against
CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing
the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the
stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and
consequential damages caused thereby including, without limitation, loss of use of the Homes;
costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

### COUNT III
### NEGLIGENCE AND VICARIOUS LIABILITY
*(THE ASSOCIATION v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in
their Capacity as General Contractors and Qualifiers, Respectively)*

81.    The Association adopts and re-alleges paragraphs 1-65 above.

82.    The Association brings this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those homes on which they served as the general contractors and/or primary qualifiers as identified in Exhibit B.

83.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for certain of the Homes and were responsible for all aspects of the construction of said Homes, including, but not limited to, exercising reasonable care in designing and constructing the Homes; and in constructing and overseeing the construction of the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

84.    As general contractors and/or qualifiers, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS had non-delegable duties to the Association, the Homeowners, and all Association members to exercise reasonable care in constructing the Homes in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations and guidelines and in such a way so to not damage other property.

85.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

86.    As the general contractors and/or qualifiers for the subject project, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors which worked on the Homes.

87.    As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' breach of the above-mentioned duties, the Association and members of the Association will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

<u>**COUNT IV**</u>
<u>**BREACH OF FLORIDA BUILDING CODE**</u>
*(THE ASSOCIATION v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

88.    The Association adopts and re-alleges paragraphs 1-65 above.

89.    The Association brings this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractor(s) and/or primary qualifiers as identified in Exhibit B.

90.    The Homes were required to be built in accordance with the Code.

91.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

92.     As the party responsible for obtaining and pulling the permits for the construction of certain of the Homes, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS owed to the Association, its members, and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

93.     CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS actively participated in the construction of the Homes in their capacity as general contractor(s) and/or primary qualifier(s); directly supervised and influenced the manner in which all of the work was performed; pulled required permits; and/or negligently created and/or negligently approved the Stucco Deficiencies.   As a result, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS committed violations of the Florida Building Code, violating §553.84, Florida Statutes.

94.     CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS knew or should have known that the building code violations existed.

95.     As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' violations of §553.84, Fla. Stat., the Association and its members (including the Homeowners) will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the

costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

### COUNT V
### DECEPTIVE AND UNFAIR TRADE PRACTICES
*(THE ASSOCIATION v. CORPORATE DEFENDANTS)*

96.    The Association adopts and re-alleges paragraphs 1-65 above.

97.    The Association and its members are consumers as that term is defined in §501.203(7), Fla. Stat.

98.    CORPORATE DEFENDANTS were involved in "trade or commerce" at all times relevant herein, as that term is defined in §501.203(8), Fla. Stat., when constructing and selling the individual dwelling units and Common Areas of the Homes to the members of the Association.

99.    CORPORATE DEFENDANTS employed unfair or deceptive acts concerning the Stucco Deficiencies on purchasers of the Homes, in violation of Florida Statutes §501.204(1), Fla. Stat., that were likely to mislead consumers, including the following:

   i.    Express and implied representations that the Homes were constructed in a good and workmanlike manner, and constructed in accordance with at least the minimum standards of the applicable building codes, when CORPORATE DEFENDANTS knew they were not with respect to the Stucco Deficiencies;

   ii.    Directing and/or approving stucco work performed by subcontractors that CORPORATE DEFENDANTS knew was in violation of the applicable building codes;

iii.    Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the Stucco Deficiencies with the Homes arose from CORPORATE DEFENDANTS' faulty construction, rather than lack of owner maintenance, and CORPORATE DEFENDANTS knew of same; and

iv.    CORPORATE DEFENDANTS knew that it was wrongfully denying warranty repairs requests relating to Stucco Deficiencies as CORPORATE DEFENDANTS had the knowledge, experience, education and training to know that other communities CORPORATE DEFENDANTS built had similar Stucco Deficiencies and suffered similar damages, yet chose to continue denying proper and timely warranty requests.

100.    CORPORATE DEFENDANTS knew that the Homes throughout the Bayberry Lakes community suffered from the Stucco Deficiencies and that the construction was in violation of the applicable building codes, which, if known, the Association's members would not have purchased their Homes for the full purchase price, or would not have purchased the Homes at all.

101.    CORPORATE DEFENDANTS negligently, recklessly, and/or intentionally concealed the Stucco Deficiencies identified above.

102.    The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

103.    CORPORATE DEFENDANTS' actions were taken in an effort to maximize profits; to place profits over the health, welfare, and safety of its consumers; and to satisfy CORPORATE DEFENDANTS' corporate greed and self-interests as CORPORATE

DEFENDANTS knew it would be unable to sell the Homes to consumers, at the prices CORPORATE DEFENDANTS sold the Homes, had CORPORATE DEFENDANTS disclosed the Stucco Deficiencies.

104.    Construction experts have discovered that the Homes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages arising from the Stucco Deficiencies.

105.    Florida's Attorney General has investigated CORPORATE DEFENDANTS for engaging in similar practices as noted above throughout Florida.

106.    CORPORATE DEFENDANTS entered into a Stipulated Consent Decree with the state of Florida in which CORPORATE DEFENDANTS agreed to perform repairs for Stucco Deficiencies to communities and houses that CORPORATE DEFENDANTS built, including the Homes.

107.    Just a couple of months after the Stipulated Consent Decree was entered, on February 4, 2016, the Association and its members served Chapter 558 notices to CORPORATE DEFENDANTS advising CORPORATE DEFENDANTS of the systemic Stucco Deficiencies and demanding repairs.

108.    Both before and after the settlement with the Attorney General and entry of the Stipulated Consent Decree, CORPORATE DEFENDANTS have repeatedly, consistently, and wrongfully rejected valid requests for repairs arising from the Stucco Deficiencies, thereby breaching the Stipulated Consent Decree and furthering their deceptive trade practices as referenced above.

109.    As a proximate cause of CORPORATE DEFENDANTS' deceptive and unfair trade practices, the Association and its members have suffered actual damages by way of diminution in value, in an amount to be determined at trial, which exceeds $75,000.00.

110.    As a result of CORPORATE DEFENDANTS' deceptive and unfair trade practices, the Association and its members have been compelled to retain the services of legal counsel so as to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings; and to retain expert consultants and witnesses as reasonably necessary to prove its case. The Association and its members are therefore entitled to an award of attorneys' fees and costs in amounts to be established at the time of trial. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, the Association demands trial by jury and judgment against CORPORATE DEFENDANTS for diminution in value damages, actual damages, attorneys' fees, and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act. The Association prays for any other relief the Court deems just and proper.

### COUNT VI
### NEGLIGENCE AND VICARIOUS LIABILITY
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

111.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-65 above.

112.    Homeowners, individually and as Class Representatives, bring this claim against the respective CORPORATE DEFENDANTS for Homes in which they served as the Developer(s) as identified in Exhibit B.

113.   CORPORATE DEFENDANTS respectively served as the developer(s) for certain of the Homes. As such, CORPORATE DEFENDANTS were respectively responsible for all aspects of the construction of the Homes in which they served as the developer(s), including, but not limited to, exercising reasonable care in the design and construction of the Homes; and in ensuring their contractors and subcontractors constructed the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

114.   As the developers, CORPORATE DEFENDANTS had non-delegable duties to Homeowners to exercise reasonable care so that the Homes were constructed (a) in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations; and (b) so as to avoid damaging the Homes.

115.   CORPORATE DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

116.   As the developers for the subject project, CORPORATE DEFENDANTS are vicariously responsible for the negligent construction performed on the Homes by their contractors and subcontractors for those Homes on which the CORPORATE DEFENDANTS served as developers.

117.   As a direct and proximate result of CORPORATE DEFENDANTS' breach of the above-mentioned duties, Homeowners will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, Homeowners, Individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

<u>**COUNT VII**</u>
<u>**BREACH OF FLORIDA BUILDING CODE**</u>
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS in Their Capacity as Developers)*

118.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-65 above.

119.    Homeowners, individually and as Class Representatives, bring this claim against the respective CORPORATE DEFENDANTS for those homes on which they served as Developer as identified in Exhibit B.

120.    The Homes were required to be built in accordance with the Code.

121.    CORPORATE DEFENDANTS respectively served as the developer and designer for the construction of certain of the Homes as identified in Exhibit B, and thus had a responsibility not to commit violations of the Code.

122.    As the entities and individuals actively participating in and responsible for constructing certain of the Homes, CORPORATE DEFENDANTS owed to Homeowners, its members, and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

123.   CORPORATE DEFENDANTS actively participated in the construction of the Homes in their capacity as developer(s); directly supervised and influenced the manner in which all of the work was performed; and/or negligently created and/or negligently approved the Stucco Deficiencies.  As a result, CORPORATE DEFENDANTS committed violations of the Florida Building Code, violating §553.84, Florida Statutes.

124.   CORPORATE DEFENDANTS knew or should have known that the building code violations existed.

125.   As a direct and proximate result of CORPORATE DEFENDANTS' violations of §553.84 Fla. Stat., the Homeowners will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, Homeowners, Individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

## COUNT VIII
## NEGLIGENCE AND VICARIOUS LIABILITY
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

126.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-65 above.

127.    Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those homes on which they served as the general contractors and/or primary qualifiers as identified in Exhibit B.

128.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for certain of the Homes and were responsible for all aspects of the construction of said Homes, including, but not limited to, exercising reasonable care in designing and constructing the Homes; and in constructing and overseeing the construction of the Homes in compliance with the permitted plans and specifications, the Florida Building Code, manufacturers' guidelines, and industry standards.

129.    As general contractors and/or qualifiers, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS had non-delegable duties to the Homeowners to exercise reasonable care in constructing the Homes in compliance with the permitted plans and specifications, the Florida Building Code, industry standards, and manufacturers' recommendations and guidelines and in such a way so to not damage other property.

130.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS breached their duties by negligently designing, constructing, inspecting, supervising, certifying, and approving the Homes, despite the Stucco Deficiencies, thereby necessitating repairs.

131.    As the general contractors and/or qualifiers for the subject project, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS are vicariously responsible for the negligent construction performed by their subcontractors which worked on the Homes.

132.    As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' breach of the above-mentioned duties, Homeowners will be required to expend significant sums of money for the repair and maintenance of the Homes and for damages caused by the Stucco Deficiencies. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, Homeowners, individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

<u>COUNT IX</u>
<u>BREACH OF FLORIDA BUILDING CODE</u>
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS in their Capacity as General Contractors and Qualifiers, Respectively)*

133.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-65 above.

134.    Homeowners, individually and as Class Representatives, bring this claim against CORPORATE DEFENDANTS and their respective INDIVIDUAL DEFENDANTS for those Homes on which they served as the general contractor(s) and/or primary qualifiers as identified in Exhibit B.

135.    The Homes were required to be built in accordance with the Code.

136.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS served as the general contractor(s) and/or primary qualifiers for the construction of certain of the Homes, and thus had a responsibility not to commit violations of the Code.

137.    As the party responsible for obtaining and pulling the permits for the construction of certain of the Homes, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS owed to Homeowners and future foreseeable owners of the Homes non-delegable duties to comply with the Florida Building Code.

138.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS actively participated in the construction of the Homes in their capacity as general contractor(s) and/or primary qualifier(s); directly supervised and influenced the manner in which all of the work was performed; pulled required permits; and/or negligently created and/or negligently approved the Stucco Deficiencies.    As a result, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS committed violations of the Florida Building Code, violating §553.84, Florida Statutes.

139.    CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS knew or should have known that the building code violations existed.

140.    As a direct and proximate result of CORPORATE DEFENDANTS' and INDIVIDUAL DEFENDANTS' violations of §553.84, Fla. Stat., Homeowners will be required to expend substantial sums of money for the repair of the Homes and for resulting damages caused by the Stucco Deficiencies, including, but not limited to, those conditions described herein, and to repair the building code violations. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, Homeowners, individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS for damages including, but not limited to, the cost of repairing the Stucco Deficiencies (including, without limitation, the costs to investigate and diagnose the stucco deficiencies); the resulting damages from the Stucco Deficiencies; the incidental and consequential damages caused thereby including, without limitation, loss of use of the Homes; costs incurred in the prosecution of this lawsuit; and pre-judgment interest.

<u>**COUNT X**</u>
<u>**DECEPTIVE AND UNFAIR TRADE PRACTICES**</u>
*(HOMEOWNERS, INDIVIDUALLY AND AS CLASS REPRESENTATIVES v. CORPORATE DEFENDANTS)*

141.    Homeowners, individually and as Class Representatives, adopt and re-allege paragraphs 1-65 above.

142.    Homeowners, individually and as Class Representatives, and its members are consumers as that term is defined in §501.203(7), Fla. Stat.

143.    CORPORATE DEFENDANTS were involved in "trade or commerce" at all times relevant herein, as that term is defined in §501.203(8), Fla. Stat., when constructing and selling the individual dwelling units and Common Areas of the Homes to the Homeowners.

144.    CORPORATE DEFENDANTS employed unfair or deceptive acts concerning the Stucco Deficiencies on purchasers of the Homes, in violation of Florida Statutes §501.204(1), Fla. Stat., that were likely to mislead consumers, including the following:

    v.    Express and implied representations that the Homes were constructed in a good and workmanlike manner, and constructed in accordance with at least the minimum standards of the applicable building codes, when CORPORATE DEFENDANTS knew they were not with respect to the Stucco Deficiencies;

vi.   Directing and/or approving stucco work performed by subcontractors that CORPORATE DEFENDANTS knew was in violation of the applicable building codes;

vii.  Unfairly and wrongfully denying warranty repair requests on the basis of lack of homeowner maintenance when the Stucco Deficiencies with the Homes arose from CORPORATE DEFENDANTS' faulty construction, rather than lack of owner maintenance, and CORPORATE DEFENDANTS knew of same; and

viii. CORPORATE DEFENDANTS knew that it was wrongfully denying warranty repairs requests relating to Stucco Deficiencies as CORPORATE DEFENDANTS had the knowledge, experience, education and training to know that other communities CORPORATE DEFENDANTS built had similar Stucco Deficiencies and suffered similar damages, yet chose to continue denying proper and timely warranty requests.

145.   CORPORATE DEFENDANTS knew that the Homes throughout the Bayberry Lakes community suffered from the Stucco Deficiencies and that the construction was in violation of the applicable building codes, which, if known, Homeowners would not have purchased their Homes for the full purchase price, or would not have purchased the Homes at all.

146.   CORPORATE DEFENDANTS negligently, recklessly, and/or intentionally concealed the Stucco Deficiencies identified above.

147.   The representations and concealments set forth above were in derogation of Florida public policy as embodied in the Florida common law requiring sellers of real property to disclose material defects not readily apparent to a buyer of real property.

148.    CORPORATE DEFENDANTS' actions were taken in an effort to maximize profits; to place profits over the health, welfare, and safety of its consumers; and to satisfy CORPORATE DEFENDANTS' corporate greed and self-interests as CORPORATE DEFENDANTS knew it would be unable to sell the Homes to consumers, at the prices CORPORATE DEFENDANTS sold the Homes, had CORPORATE DEFENDANTS disclosed the Stucco Deficiencies.

149.    Construction experts have discovered that the Homes were not constructed in a good and workmanlike manner and not in accordance with at least the minimum standards of the applicable building codes and other industry standards, and are plagued by water intrusion and related damages arising from the Stucco Deficiencies.

150.    Florida's Attorney General has investigated CORPORATE DEFENDANTS for engaging in similar practices as noted above throughout Florida.

151.    CORPORATE DEFENDANTS entered into a Stipulated Consent Decree with the state of Florida in which CORPORATE DEFENDANTS agreed to perform repairs for Stucco Deficiencies to communities and houses that CORPORATE DEFENDANTS built, including the Homes.

152.    Just a couple of months after the Stipulated Consent Decree was entered, on February 4, 2016, Homeowners served Chapter 558 notices to CORPORATE DEFENDANTS advising CORPORATE DEFENDANTS of the systemic Stucco Deficiencies and demanding repairs.

153.    Both before and after the settlement with the Attorney General and entry of the Stipulated Consent Decree, CORPORATE DEFENDANTS have repeatedly, consistently, and wrongfully rejected valid requests for repairs arising from the Stucco Deficiencies, thereby

breaching the Stipulated Consent Decree and furthering their deceptive trade practices as referenced above.

154.    As a proximate cause of CORPORATE DEFENDANTS' deceptive and unfair trade practices, Homeowners have suffered actual damages by way of diminution in value, in an amount to be determined at trial, which exceeds $75,000.00.

155.    As a result of CORPORATE DEFENDANTS' deceptive and unfair trade practices, Homeowners and its members have been compelled to retain the services of legal counsel so as to comply with statutory requirements prior to litigation and to institute and prosecute these proceedings; and to retain expert consultants and witnesses as reasonably necessary to prove its case. Homeowners and its members are therefore entitled to an award of attorneys' fees and costs in amounts to be established at the time of trial. The damages, in an amount to be determined at trial, are in excess of $75,000.00 (Seventy Five Thousand Dollars) and continuing.

**WHEREFORE**, Homeowners, individually and as Class Representatives, demand trial by jury and judgment against CORPORATE DEFENDANTS for diminution in value damages, actual damages, attorneys' fees, and costs pursuant to the Florida Deceptive & Unfair Trade Practices Act. Homeowners, individually and as Class Representatives, pray for any other relief the Court deems just and proper.

DATED:  February 21, 2018.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2018, I electronically filed the foregoing Second Amended Complaint with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: James Michal Walls, Lannie D. Hough, Jr., Katherine L. Heckert, and Brian C. Porter, Carton Fields Jorden Burt, P.A., P.O. Box 3239, Tampa, FL 33601.

*/s/ Evan Small, Esquire*
**Evan J. Small**, FL No. 57306
**Kelly M. Corcoran,** FL No. 55564
Trial Counsel
Ball Janik, LLP
201 E Pine Street, Suite 600
Orlando, FL 32801
Telephone:           (407) 455-5664
Facsimile:           (407) 902-2105
E-Mail:      esmall@balljanik.com
                 kcorcoran@balljanik.com